# In the United States Court of Federal Claims

No. 19-1241C
(Filed: September 23, 2019)

```
**********************************
```

| | |
|---|---|
| JEAN DUFORT BAPTICHON, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES, | * |
| | * |
| Defendant. | * |

Pro Se Plaintiff; Sua Sponte Dismissal; Medal for Merit; 10 U.S.C. § 1122; Subject-Matter Jurisdiction; Money-Mandating Source of Law; Frivolous Claims; Statute of Limitations; 28 U.S.C. § 2501; Failure to State a Claim; In Forma Pauperis

```
**********************************
```

Jean Dufort Baptichon, Freeport, NY, pro se.

Albert S. Iarossi, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Chief Judge

In this case, pro se plaintiff Jean Dufort Baptichon alleges that he is entitled to receive the self-assessed monetary value of a Medal of Merit issued to him by President George H.W. Bush. Mr. Baptichon further alleges that the federal government has engaged in unfair and deceptive acts and practices and intentional infliction of emotional distress by forcing him to determine the value of the Medal of Merit on his own. Accordingly, Mr. Baptichon seeks $20 billion in damages.

As explained below, Mr. Baptichon's complaint is untimely, fails to identify a money-mandating source of law, sounds in tort, and advances claims that are wholly frivolous and lack merit. In any event, Mr. Baptichon has previously filed a complaint in this court setting forth many of the same allegations and arguments; that complaint ultimately resulted in two written decisions denying his claims for relief. Therefore, without awaiting a response from defendant, the court dismisses Mr. Baptichon's complaint for lack of subject-matter jurisdiction.

# I. BACKGROUND

## A. Statutory and Regulatory Context

Congress created a decoration known as the "Medal for Merit" in 1942. Act of July 20, 1942, ch. 508, § 2(2), 56 Stat. 662, 663 (codified as amended at 10 U.S.C. § 1122 (2018)). In doing so, Congress empowered the President to award the Medal for Merit to civilians who had "distinguished themselves by exceptionally meritorious conduct in the performance of outstanding services" in prosecuting World War II. Id. Congress specified that the President's decision to award the Medal for Merit was discretionary and would be carried out "under such rules and regulations as [the President] shall prescribe." Id.

Pursuant to that authority, three executive orders were issued pertaining to the Medal for Merit.[1] In Executive Order 9857A, which superseded the previous executive order on the subject, President Harry S. Truman reconstituted the board that President Franklin D. Roosevelt had created to "receive and consider proposals for the award of the decoration of the Medal for Merit and submit to the President the recommendations of the Board with respect thereto." 12 Fed. Reg. 3583 (May 27, 1947). President Truman also set a June 30, 1947 deadline for submitting proposals for award to the board.

## B. Factual Background

Mr. Baptichon identifies himself as "a native Haitian and a naturalized United States citizen." Compl. ¶ 1. He was born sometime between September 1955 and August 1956, inclusive. See Compl. Ex. B at 21 (referring to himself as a "19 year-old" as of August 30, 1975). In 1979, Mr. Baptichon registered as a Republican with the local election board and joined Ronald Reagan's presidential campaign as a grassroots volunteer. Id. at 23-24. In November 1984, shortly after his re-election, President Reagan allegedly "presented to [Mr. Baptichon] a Four-Star Medal of Merit that he signed as President Reagan." Id. at 27. At the time, Mr. Baptichon was a regular monthly contributor to the Reagan-Bush campaign. Compl. ¶ 6.

Mr. Baptichon further contends that in 1991, President George H.W. Bush presented him "his second Presidential Medal of Merit." Id. ¶ 7. Based on his belief that "the 'Medal of Merit' [had] political, diplomatic, symbolic and monetary values pertaining to it," Mr. Baptichon then purportedly attempted to retrieve his 1984 medal from the safe-deposit box, but he was unable to do so because the bank "was no longer in operation." Id. He avers that the Federal Bureau of Investigation did not respond to his request for assistance regarding his medal supposedly having been "embezzled." Id. ¶¶ 7-8. Also in 1991, Mr. Baptichon attended a party fundraiser, "costing him over $1,000," at which President George H.W. Bush, Vice President Dan Quayle, and members of Congress "distributed some memorabilia." Id. ¶ 10.

---

[1] Exec. Order No. 9857A: Medal for Merit, 12 Fed. Reg. 3583 (May 27, 1947); Exec. Order 9331: Medal for Merit, 8 Fed. Reg. 5423 (Apr. 19, 1943); Exec. Order 9286: Medal for Merit, 7 Fed. Reg. 10899 (Dec. 24, 1942).

On June 4, 2004, Mr. Baptichon received a letter signed by President George W. Bush. Id. ¶ 16.  See generally Compl. Ex. A.  That letter was a solicitation, paid for by a political fundraising committee, asking Mr. Baptichon to attend a July 21, 2004 dinner in Washington, DC with President George W. Bush, First Lady Laura Bush, and "the entire Republican Party Leadership . . . to celebrate [President George W. Bush's] first term in office."  Id. at 1.  In the letter, President George W. Bush stated that "much work remains to be done and none of what we have accomplished to date would have been possible without you.  Your steadfast support has made the Republican Party America's majority party."  Id.  The then-President listed some of the accomplishments that he planned to celebrate at the July 21, 2004 dinner, and remarked that "all of us . . . owe you a deep debt of gratitude for your support.  And all of us want to recognize and honor the commitment and sacrifices you've made for our Party and our nation."  Id. at 1-2.  Mr. Baptichon does not allege that he attended the dinner.

On October 24, 2004, Mr. Baptichon travelled to Washington, DC seeking an unscheduled meeting with Secretary of State Colin Powell.  Compl. Ex. B at 71.  He took only an envelope that "contained the Senatorial Commission issued to [him] by the Republican leadership, a presidential identification card with [his] name on it and the subject 'Presidential Medal of Merit.'"  Id. at 71-72.  Mr. Baptichon emphasizes that "the goal and objective of [his] unannounced visit to the Department of State . . . was to duly cash in on this 'Medal of Merit' from the Congress of the United States."  Id. at 81.  However, Secretary Powell was out of the country at the time; the ranking State Department official with whom Mr. Baptichon conversed upon his arrival indicated that he could not accept the medal on Secretary Powell's behalf, and suggested that Mr. Baptichon make an appointment.  Id. at 79.  The record does not reflect, nor does Mr. Baptichon allege, that he ever did so.

## C.  Procedural History

On September 11, 2008, Mr. Baptichon filed suit in this court seeking $20 billion "for the 'fixed sum' of the Medal."  Baptichon v. United States, 85 Fed. Cl. 754, 755, aff'd, 342 F. App'x 617 (Fed. Cir. 2009) (unpublished per curiam decision).  In that complaint, he alleged that "the acceptance of the Medal has caused him 'moral turpitude,'" the medal was awarded to him in violation of the United States Constitution and ethics guidelines, and that "the President has acknowledged a 'deep national debt of gratitude' in a letter to [him] accompanying the Medal." Id.  In granting a contested motion to dismiss, the court explained:

> Mr. Baptichon's Complaint fails to reference a statute or regulation
> that provides a substantive source of law that mandates
> compensation.  Instead, Mr. Baptichon's Complaint alleges that he
> is entitled to compensation for the Medal.  This Medal was
> established by the Act of July 20, 1942.  Furthermore, the
> procedures for awarding the Medal are contained in Executive
> Order No. 9857A.  Neither the Act of July 20, 1942, nor Executive
> Order No. 98[5]7A, nor any other statute or regulation establishes
> a source of law that mandates compensation.  Accordingly, it is

> clear to the Court that Mr. Baptichon's Complaint, even if liberally construed, is not within this Court's jurisdiction.

Id. (citations omitted).

After unsuccessfully seeking reconsideration of the dismissal of his complaint, Mr. Baptichon appealed the decision to the United States Court of Appeals for the Federal Circuit ("Federal Circuit"). The Federal Circuit remarked that "[t]he trial court correctly enforced its jurisdictional limits" and affirmed the dismissal. Baptichon v. United States, 342 F. App'x at 617. In doing so, the Federal Circuit observed:

> Mr. Baptichon explains that "[t]he President of the United States made an offer of the medal of merit at issue to the plaintiff/appellant who in turn accepted the offer and relied in good faith to his detriment by . . . financially committing himself to politically and socially support the defendant . . . ." Mr. Baptichon's reference to 10 U.S.C. § 1122 and Executive Order 9857A . . . seems to refer to the Medal for Merit. . . . [Mr.] Baptichon has cited no statute or regulation that provides for any monetary award attached to the medal or any additional rights conferred when it is granted. Nor has this court found such a statute or regulation.

Id.

On August 19, 2019, Mr. Baptichon initiated the instant lawsuit. Mr. Baptichon advances three causes of action in his complaint. First, Mr. Baptichon asserts that President George W. Bush admitted to owing him a debt. Compl. ¶ 16. Second, he maintains that the federal government "intentionally and recklessly inflicted severe emotional and mental distress and caused moral turpitude" upon him by issuing the Medal of Merit and "by making said admission of such 'deep debt' to [him] without specifically stating the monetary value in said admission, leaving it to [him] to assess or determine [the value] on his own." Id. ¶ 17. He contends that his emotional distress is exacerbated by the economic conditions in his native Haiti because those conditions are caused by the federal government. Id. ¶ 18. Third, in the alternative to his first two counts, Mr. Baptichon theorizes that 10 U.S.C. § 1122 and Executive Order 9857A are unconstitutional and violate ethics guidelines because the Medal of Merit "was not and is not necessary to achieve a compelling government purpose," nor was its issuance "substantially related to an important government objective," but rather to induce him to make political contributions.[2] Id. ¶ 19-20.

---

[2] Mr. Baptichon refers to "Executive Order No. 9867A" in his complaint. See Compl. ¶¶ 5, 19. The discrepancy appears to reflect a typographical error. Thus, the court treats any reference by Mr. Baptichon to Executive Order 9867A as a reference to Executive Order 9857A.

## II. LEGAL STANDARDS

### A. Subject-Matter Jurisdiction

Whether the court possesses jurisdiction to decide the merits of a case is a "threshold matter." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). Subject-matter jurisdiction cannot be waived or forfeited because it "involves a court's power to hear a case." Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 74 U.S. (7 Wall) 506, 514 (1868). Therefore, it is "an inflexible matter that must be considered before proceeding to evaluate the merits of a case." Matthews v. United States, 72 Fed. Cl. 274, 278 (2006); accord K-Con Bldg. Sys., Inc. v. United States, 778 F.3d 1000, 1004-05 (Fed. Cir. 2015).

Either party, or the court sua sponte, may challenge the court's subject-matter jurisdiction at any time. Arbaugh, 546 U.S. at 506; see also Jeun v. United States, 128 Fed. Cl. 203, 209-10 (2016) (collecting cases). The court must examine all pertinent issues relevant to subject-matter jurisdiction because "[c]ourts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010); accord Gonzalez v. Thaler, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented.").

In determining whether subject-matter jurisdiction exists, the court generally "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011). Pro se pleadings are "held to less stringent standards than formal pleadings drafted by lawyers" and are "to be liberally construed." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). However, the "leniency afforded to a pro se litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." Minehan v. United States, 75 Fed. Cl. 249, 253 (2007); accord Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995) ("The fact that [the plaintiff] acted pro se in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures, if such there be."). In other words, a pro se plaintiff is not excused from the burden of proving, by a preponderance of evidence, that the court possesses jurisdiction. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 179 (1936); Banks v. United States, 741 F.3d 1268, 1277 (Fed. Cir. 2014) (citing Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988)).

Furthermore, the court has no subject-matter jurisdiction over frivolous claims. Moden v. United States, 404 F.3d 1335, 1340-41 (Fed. Cir. 2005). For example, there is no subject-matter jurisdiction over claims that are "so insubstantial, implausible, foreclosed by prior decisions . . . , or otherwise completely devoid of merit as not to involve a federal controversy." Id. at 1341 (quoting Steel, 523 U.S. at 89); see also Denton v. Hernandez, 504 U.S. 25, 33 (1992) ("[A]

finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible . . . .").

If the court finds that it lacks subject-matter jurisdiction over a claim, Rule 12(h)(3) of the Rules of the United States Court of Federal Claims ("RCFC") requires the court to dismiss that claim.

## B. The Tucker Act

The ability of the United States Court of Federal Claims ("Court of Federal Claims") to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). The waiver of immunity "may not be inferred, but must be unequivocally expressed." United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003). The Tucker Act, the principal statute governing the jurisdiction of this court, waives sovereign immunity for claims against the United States, not sounding in tort, that are founded upon the United States Constitution, a federal statute or regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1) (2012); White Mountain, 537 U.S. at 472. However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 298 (1976). Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc). "[T]he absence of a money-mandating source [is] fatal to the court's jurisdiction under the Tucker Act." Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005).

The test of whether a statute or regulation is money-mandating is whether it "can fairly be interpreted as mandating compensation for damages sustained as a result of a breach of the duties [it] impose[s]." United States v. Mitchell, 463 U.S. 206, 219 (1983). In other words, "a statute creating a Tucker Act right [must] be reasonably amenable to the reading that it mandates a right of recovery in damages." White Mountain, 537 U.S. at 473.

Further, to fall within the court's jurisdiction, any claim against the United States filed in the Court of Federal Claims must be "filed within six years after such claim first accrues." 28 U.S.C. § 2501. A cause of action accrues "when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." San Carlos Apache Tribe v. United States, 639 F.3d 1346, 1350 (Fed. Cir. 2011) (quoting Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed. Cir. 1988)). The limitations period set forth in 28 U.S.C. § 2501 is an "absolute" limit on the ability of the Court of Federal Claims to exercise jurisdiction and reach the merits of a claim. John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133-35 (2008).

## C. Failure to State a Claim Upon Which Relief Can Be Granted

In addition to considering subject-matter jurisdiction <u>sua sponte</u>, the court may dismiss a complaint <u>sua sponte</u> for failure to state a claim upon which relief can be granted if "the pleadings sufficiently evince a basis for that action." <u>Anaheim Gardens v. United States</u>, 444 F.3d 1309, 1315 (Fed. Cir. 2006); <u>see, e.g.</u>, <u>Sun v. United States</u>, 130 Fed. Cl. 569, 569 ("[P]ursuant to its inherent authority, the Court <u>sua sponte</u> dismisses [the plaintiff's] complaint for failure to state a claim."), <u>aff'd</u>, 668 F. App'x 888 (Fed. Cir. 2016) (unpublished decision). Indeed, Congress has specified that courts "<u>shall</u> dismiss the case at any time" upon a determination that the action "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii) (emphasis added). A <u>sua sponte</u> dismissal for failure to state a claim does not violate due process when the claim is "untenable as a matter of law, and no additional proceedings" could enable the plaintiff "to prove any set of facts entitling him to prevail on his claim for relief." <u>Constant v. United States</u>, 929 F.2d 654, 657 (Fed. Cir. 1991). In such circumstances, "any expenditure of governmental resources in preparing a defense to [the] complaint would be a waste of public funds." <u>Sun</u>, 130 Fed. Cl. at 569.

## III. ANALYSIS

In his complaint, Mr. Baptichon alleges that he is owed $20 billion for the value of his Medal of Merit and that the federal government has engaged in intentional infliction of emotional distress, caused moral turpitude, failed to act on his request for law enforcement assistance (which the court construes as negligence), and committed fraud in the inducement of his political contributions. The Court of Federal Claims lacks subject-matter jurisdiction to consider any of these claims.

## A. Mr. Baptichon Did Not Receive the Medal for Merit Described in 10 U.S.C. § 1122

As an initial matter, the court observes that Mr. Baptichon appears to conflate the "Medal <u>for</u> Merit" awarded by the President pursuant to the Act of July 20, 1942, 10 U.S.C. § 1122, and Executive Order 9857A with the "Medal <u>of</u> Merit" awards that he allegedly received from Presidents Reagan and George W. Bush. (Emphases added). The Medal for Merit "is a decoration that Congress authorized the President to award to civilians who performed outstanding service to the Allied cause in World War II." <u>Baptichon</u>, 342 F. App'x at 342. World War II ended, and the Medal for Merit board stopped receiving proposals for the award, prior to Mr. Baptichon's birth. Therefore, Mr. Baptichon could not have received the Medal for Merit. The Medal of Merit is an entirely different award altogether.

**B.  The Medal for Merit Statutes and Regulations Are Not Money-Mandating**

Mr. Baptichon argues that the Act of July 20, 1942 (in particular, section 3), 10 U.S.C. § 1122, and Executive Order 9857A are each "a source of law that mandates compensation appurtenant to" his medal.  Compl. ¶ 5.  According to Mr. Baptichon, Congress and the President "have authorized [him] to assess the value of this Medal of Merit" because it "symbolizes a special bill . . . which the President signed," and he has self-assessed the medal to be worth $20 billion.  Compl. Ex. B at 78-79.

The provisions of law upon which Mr. Baptichon relies pertain to the Medal for Merit, not the Medal of Merit.  Because he could not have received the Medal for Merit, Mr. Baptichon's reliance on various statutes and regulations pertaining to that award are unavailing. In any event, however, the Medal for Merit statutes and regulations are not money-mandating. That Congress "authorized to be appropriated . . . such sums as may be necessary for the purpose of carrying out the provisions of" the Act of July 20, 1942, 56 Stat. at 663, is of no moment.  As has been explained to Mr. Baptichon previously, neither this statute nor Executive Order 9857A mandates any form of compensation.  Thus, even if he had received the Medal for Merit, Mr. Baptichon is not entitled to money for that award.

Further, Mr. Baptichon does not identify any statutes or regulations pertaining to the Medal of Merit awards that he allegedly received from Presidents Reagan and George W. Bush, and the court is not aware of any.  Of course, he cannot do so.  The Medal of Merit represents an inducement used by a political campaign to attract contributions, not recognition of a debt owed by the federal government to specific individual(s).  See, e.g., Compl. Ex. B at 29 (remarking that he received the 1991 Medal of Merit "for [his] political and financial support during [President George H.W. Bush's] electoral campaign").  Further, President George W. Bush's June 4, 2004 acknowledgement of a "deep debt" owed to Mr. Baptichon is of no moment with respect to this lawsuit.  As Mr. Baptichon correctly notes, President George W. Bush never referenced the monetary value of that supposed debt.  That is because the debt was one "of gratitude"—not money.  Mr. Baptichon's entire theory of the case rests on the idea that because President George W. Bush did not assign a monetary value to the Medal of Merit, he himself can assign a monetary value of his choosing that he can then exact from the federal government. Such an argument is patently frivolous.  To the extent that the Medal of Merit has a monetary value, it can only be realized in the marketplace.  See Compl. Ex. B at ii (observing that the Medal of Merit is available online via websites such as Ebay).

Because there is no source of law mandating compensation for either the Medal for Merit or the Medal of Merit, the Court of Federal Claims has no subject-matter jurisdiction over any such claims.  To the extent that the court has such jurisdiction, Mr. Baptichon fails to state a plausible claim for relief because the statutes upon which he relies pertain to the Medal for Merit, which he could not have received.

## C. The Doctrine of Issue Preclusion Bars Mr. Baptichon's Medal of Merit Claim

In any event, the court lacks jurisdiction to consider Mr. Baptichon's claim for monetary compensation for his Medal of Merit under the doctrine of issue preclusion.[3]  Under this doctrine, a party is foreclosed from relitigating an issue that has already been decided.  Taylor v. Sturgell, 553 U.S. 880, 892 (2008).  The doctrine applies "even if the issue recurs in the context of a different claim," id., and thus it "prevent[s] parties from 'getting two bites at the apple' through re-litigating rather than appealing a decision through the appropriate channels," Lowe v. United States, 79 Fed. Cl. 218, 227 (2007).  Four elements must be satisfied to establish issue preclusion:

> (1) an issue is identical to one decided in the first action;
>
> (2) the issue was actually litigated in the first action;
>
> (3) the resolution of the issue was essential to a final judgment in the first action; and
>
> (4) the party defending against the issue had a full and fair opportunity to litigate the issue in the first action.

Shell Petroleum, Inc. v. United States, 319 F.3d 1334, 1338 (Fed. Cir. 2014).

Jurisdictional determinations can be proper subjects for the application of the doctrine of issue preclusion.  Chisolm v. United States, 82 Fed. Cl. 185, 195 (2008) ("[A]n issue that would otherwise fall within a first court's jurisdiction may be decided by that court with preclusive effect for subsequent courts—even when the first court decides, as a consequence, that it lacks jurisdiction.").  However, an adverse jurisdictional determination will not have a preclusive effect if the jurisdictional defect has been subsequently cured.  Lowe, 79 Fed. Cl. at 229-30.  If no such cure has been accomplished, and the elements of issue preclusion have otherwise been established, the court must dismiss the precluded claim for lack of jurisdiction.  Id. at 227.

In the instant case, all four elements for establishing issue preclusion are present.  First, the issue of whether the Medal for Merit statutes and regulations are money-mandating is "identical" to the issue decided in Mr. Baptichon's 2008 case in the Court of Federal Claims and 2009 appeal to the Federal Circuit.  Second, that issue was "actually litigated" in the prior action because it was the subject of a contested motion to dismiss before the Court of Federal Claims and a contested appeal before the Federal Circuit.  Third, the resolution of that issue was "essential" to the final earlier judgment because it was the central issue that was contested; indeed, the trial court dismissed the case for lack of subject-matter jurisdiction based upon its conclusion that the Medal for Merit statutes and regulations were not money-mandating, and the

---

[3] Issue preclusion is also known as collateral estoppel.  Allen v. McCurry, 440 U.S. 90, 94 n.5 (1980).  This is distinct from, albeit related to, the concept of claim preclusion, which is also known as res judicata.  Id.

Federal Circuit affirmed the dismissal on the same basis. Fourth, Mr. Baptichon was a party to both the earlier and the instant litigation since he was the plaintiff in both cases; he had a "full and fair opportunity" to litigate the issue previously as it was the subject of two written decisions following full briefing. Finally, Mr. Baptichon has not cured the jurisdictional defect that was present in his earlier case because he relies on the same sources of law as purportedly being money-mandating that he did previously.

Therefore, under the doctrine of issue preclusion, this court lacks jurisdiction to consider Mr. Baptichon's claim for money damages to the extent that his claim relies on the Medal for Merit statutes and regulations as money-mandating sources of law.

### D. The Court of Federal Claims Lacks Jurisdiction Over Mr. Baptichon's Tort Claims

In addition, the Court of Federal Claims lacks jurisdiction to entertain claims based on alleged tortious conduct. 28 U.S.C. § 1491(a)(1); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008). Mr. Baptichon's claims of intentional infliction of emotional distress, negligence, and fraud sound in tort.[4] See, e.g., Brestle v. United States, 139 Fed. Cl. 95, 107 (2018) (intentional infliction of emotional distress); Lawrence Battelle, Inc. v. United States, 117 Fed. Cl. 579, 585 (2014) (negligence and fraud). Further, Mr. Baptichon's "moral turpitude" claim is, at best, a tort claim. See Moral turpitude, Black's Law Dictionary (11th ed. 2019) (defining "moral turpitude" as "[c]onduct that is contrary to justice, honesty, or morality" or "an act that demonstrates depravity").

Under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671-2680, jurisdiction over tort claims against the United States lies exclusively in federal district courts. U.S. Marine, Inc. v. United States, 722 F.3d 1360, 1365-66 (Fed. Cir. 2013). The Court of Federal Claims is not a federal district court. Ledford v. United States, 297 F.3d 1378, 1382 (Fed. Cir. 2002); see also Lightfoot v. Cendant Mortg. Corp., 137 S. Ct. 553, 563 (2017) (distinguishing between the "Court of Federal Claims" and "federal district courts"). Therefore, "[w]here the adjudication of a type of claim has been granted to the district courts exclusively, [the Court of Federal Claims] has no jurisdiction to hear the case and must dismiss the matter." Ross v. United States, 122 Fed. Cl. 343, 348 (2015).

Furthermore, Mr. Baptichon's fraud claim is "completely devoid of merit as not to involve a federal controversy." Moden, 404 F.3d at 1341. As such, it is frivolous and thus fails to invoke this court's—or any court's—subject-matter jurisdiction. Id. at 1340-41. As noted above, the Medal of Merit incentive represents a garden-variety inducement by a political campaign. It does not come anywhere near the level of actionable fraud. Mr. Baptichon's negligence and intentional infliction of emotional distress claims are also frivolous because they "rise to the level of the irrational or the wholly incredible," Denton, 504 U.S. at 33, even under a

---

[4] To the extent that the fraud alleged by Mr. Baptichon can be construed as a criminal act, the Court of Federal Claims similarly lacks jurisdiction. See Hufford v. United States, 87 Fed. Cl. 696, 702 (2009) (collecting cases).

liberal construction over the complaint.  Finally, the Court of Federal Claims "has no jurisdiction to adjudicate general claims of moral deficiencies." Baptichon, 342 F. App'x at 617.

In sum, the Court of Federal Claims lacks subject-matter jurisdiction to consider Mr. Baptichon's intentional infliction of emotional distress, moral turpitude, negligence, and fraud claims.

### E. Mr. Baptichon's Claims Are Time-Barred

Even if this court otherwise had jurisdiction to entertain any of Mr. Baptichon's claims, they are barred by the six-year statute of limitations generally applicable in the Court of Federal Claims.  See 28 U.S.C. § 2501.  His claims accrued no later than October 24, 2004, when he unsuccessfully attempted to cash in his Medal of Merit by delivering it to Secretary Powell.  By that time, if not beforehand, Mr. Baptichon was (or should have been) fully aware that the federal government was not going to compensate him monetarily for his Medal of Merit.  Therefore, the six-year statute of limitations imposed by 28 U.S.C. § 2501 expired on October 24, 2010.  Because Mr. Baptichon did not file the instant complaint until August 19, 2019, the court lacks jurisdiction to consider his claims.

### IV. IN FORMA PAUPERIS APPLICATION

To proceed with a civil action in this court, a plaintiff must either pay $400.00 in fees—a $350.00 filing fee plus a $50.00 administrative fee—or request authorization to proceed in forma pauperis without the prepayment of fees.[5]  See 28 U.S.C. §§ 1915, 1926; RCFC 77.1(c); see also Waltner v. United States, 93 Fed. Cl. 139, 141 n.2 (2010) (concluding that 28 U.S.C. § 1915(a)(1) applies to both prisoners and nonprisoners alike).  Plaintiffs wishing to proceed in forma pauperis must submit an affidavit that (1) lists all of their assets, (2) declares that they are unable to pay the fees or give the security, and (3) states the nature of the action and their belief that they are entitled to redress.[6]  28 U.S.C. § 1915(a)(1).  Evaluation of a plaintiff's ability to pay is "left to the discretion of the presiding judge, based on the information submitted by the plaintiff."  Alston-Bullock v. United States, 122 Fed. Cl. 38, 45 (2015).

---

[5] While the Court of Federal Claims is not generally considered to be a "court of the United States" within the meaning of title 28 of the United States Code, the court has jurisdiction to grant or deny applications to proceed in forma pauperis.  See 28 U.S.C. § 2503(d) (deeming the Court of Federal Claims to be a "court of the United States" for purposes of 28 U.S.C. § 1915).

[6] For the convenience of litigants, the Court of Federal Claims provides an "Application to Proceed In Forma Pauperis" that, if properly completed, serves as the required affidavit.  The application is available on the court's website.

Mr. Baptichon filed, concurrent with his complaint, an application to proceed in forma pauperis.  His application is deficient in two important respects.  First, he provides income information for the 2018 calendar year, rather than the twelve months immediately preceding the filing of his complaint.  Second, he provides no information regarding future expected earnings.  Accordingly, Mr. Baptichon has not provided sufficient information for the court to determine his ability to pay.  Nevertheless, given that Mr. Baptichon does not advance any cognizable claims, the court exercises its discretion to grant his application and waive the prepayment of his filing fee for the limited purpose of determining this court's subject-matter jurisdiction.

## V.  CONCLUSION

The Court of Federal Claims lacks subject-matter jurisdiction to consider Mr. Baptichon's claims.  To the extent that the court has such jurisdiction, Mr. Baptichon fails to state a claim upon which this court can grant relief.

Accordingly, Mr. Baptichon's complaint is **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.  No costs.  The clerk is directed to enter judgment accordingly.

In addition, the court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith.  Mr. Baptichon's claims are clearly beyond the subject-matter jurisdiction of this court, and he has already received two written decisions (prior to this one) regarding the claims he now advances.

**IT IS SO ORDERED.**

MARGARET M. SWEENEY
Chief Judge